UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL WITTKOPP, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | **PLAINTIFF REQUESTS A** |
| -vs- | : | **TRIAL BY JURY** |
| | : | |
| STEPOWOY ENTERPRISES, LLC; | : | |
| PLUMBING HERE IN ALLENTOWN | : | |
| d/b/a ROTO ROOTER; | : | |
| MARK STEPOWOY, | : | |
| JOHN STEPOWOY, | : | |
| *and* JUSTIN SHAW | : | |
| | : | |
| | : | **COMPLAINT** |
| Defendants. | : | |
| | : | |

Plaintiff, MICHAEL WITTKOPP ("Plaintiff" and/or "Mr. Wittkopp"), by and through his undersigned counsel, hereby files this Civil Action Complaint against Defendants STEPOWOY ENTERPRISES, LLC; PLUMBING HERE IN ALLENTOWN d/b/a ROTO ROOTER; MARK STEPOWOY, individually; JOHN STEPOWOY, individually; and JUSTIN SHAW, individually (collectively, "Defendants"), and upon information and belief, avers as follows:

## NATURE OF THE CASE

This is an action for disability discrimination, failure to provide reasonable accommodations, retaliation, hostile work environment, and wrongful termination arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). Plaintiff seeks all legal and equitable relief available under the ADA and PHRA, including compensatory damages, punitive damages (where permitted by law), back pay, front pay, lost benefits, attorney's fees, costs, pre- and post-judgment interest, and such other relief as this Court deems just and proper, to redress

1

the injuries he suffered as a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct.

## JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA").

2. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful employment practices complained of herein occurred within the Eastern District of Pennsylvania, including at Defendants' Allentown, Pennsylvania location where Plaintiff was employed.

5. On or about May 3, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), alleging disability discrimination, retaliation, hostile work environment, and wrongful termination in violation of the ADA and PHRA.

6. On May 6, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to his federal claims.

7. Plaintiff has satisfied all conditions precedent to the institution of this action and has exhausted all administrative remedies required under the ADA.

2

8. Plaintiff has commenced this action within ninety (90) days of his receipt of the EEOC's Notice of Right to Sue.

**PARTIES**

9. Plaintiff, MICHAEL WITTKOPP ("Plaintiff" or "WITTKOPP"), is an adult individual and a resident of Lehigh County, Pennsylvania.

10. Defendant, STEPOWOY ENTERPRISES, LLC ("Stepowoy Enterprises"), is, upon information and belief, a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and authorized to conduct business in the Commonwealth of Pennsylvania.

11. Defendant, PLUMBING HERE IN ALLENTOWN d/b/a ROTO ROOTER ("Roto Rooter"), is, upon information and belief, a foreign limited liability company organized under the laws of the State of Ohio and authorized to conduct business in the Commonwealth of Pennsylvania.

12. At all times relevant hereto, Stepowoy Enterprises and Roto Rooter jointly employed Plaintiff within the meaning of the ADA and the PHRA.

13. At all times relevant hereto, Defendants operated a plumbing business, including the facility located at 3717 Huckleberry Road, Allentown, Pennsylvania 18104, where Plaintiff was employed as General Manager.

14. At all times relevant hereto, Defendant Mark Stepowoy was an owner and operator of Defendants' business and exercised supervisory authority over Plaintiff.

15. At all times relevant hereto, Defendant John Stepowoy was the Regional Manager and exercised supervisory authority over Plaintiff.

16. At all times relevant hereto, Defendant Justin Shaw was the Human Resources Director and exercised supervisory authority over Plaintiff.

17. At all times relevant hereto, Plaintiff was qualified to perform the essential functions of his position as General Manager, with or without reasonable accommodation.

18. At all times relevant hereto, Defendants employed well in excess of the statutory minimum number of employees required to constitute an "employer" within the meaning of the ADA and the PHRA.

## MATERIAL FACTS

19. On or around October 17, 2022, Plaintiff began his employment with Defendants as the General Manager of Defendants' Allentown, Pennsylvania location.

20. As General Manager, Plaintiff was responsible for overseeing the daily operations of Defendants' Allentown branch, supervising employees, managing personnel, maintaining customer relationships, and ensuring the successful operation and profitability of the business.

21. Throughout his employment, Plaintiff devoted himself to his position and consistently worked to further Defendants' business interests.

22. At all times material, Plaintiff was qualified for his position and was capable of performing the essential functions of his job with or without reasonable accommodation.

23. On or around January 10, 2024, Plaintiff was diagnosed with chronic anxiety and Major Depressive Disorder.

24. Plaintiff's disabilities substantially limited one or more major life activities, including sleeping, concentrating, thinking, interacting with others, regulating emotions, and working.

25. Plaintiff remained under the care of medical professionals and actively sought treatment for his disabilities.

26. Immediately after receiving his diagnosis, Plaintiff informed Defendants Mark Stepowoy and John Stepowoy of his disabilities and the significant impact they were having on his daily life and ability to function.

27. Plaintiff continued to keep Defendants informed regarding his diagnosis, treatment, and worsening symptoms throughout his employment.

28. Defendants were therefore fully aware that Plaintiff suffered from serious mental health disabilities protected under the ADA and the PHRA.

29. Despite this knowledge, Defendants failed to treat Plaintiff's disabilities with the seriousness and sensitivity required by law.

30. Instead, Defendants increasingly subjected Plaintiff to discriminatory comments, heightened scrutiny, and disparate treatment because of his disabilities.

31. On or around April 10, 2024, Plaintiff sought additional medical treatment because his anxiety and depression had significantly worsened.

32. As Plaintiff's symptoms progressed, Defendants continued to receive notice that Plaintiff was experiencing serious mental health difficulties.

33. Rather than offering support or discussing potential workplace accommodations, Defendants ignored Plaintiff's medical condition.

34. Defendant John Stepowoy mocked Plaintiff's disability by telling Plaintiff, "Hey, if there was anyone in the world who needs to smoke weed, it's you and my mother."

35. Defendant John Stepowoy's comments trivialized Plaintiff's diagnosed disabilities and contributed to a hostile work environment.

36. Defendants failed to prevent, correct, or otherwise address this discriminatory conduct.

5

37. On or around November 14, 2024, Plaintiff disclosed to Defendant Justin Shaw, Defendants' Human Resources Director, that he suffered from chronic anxiety, Major Depressive Disorder, and insomnia.

38. Defendant Shaw acknowledged Plaintiff's disclosures and referred Plaintiff to Defendants' Employee Assistance Program ("EAP"), thereby confirming Defendants' knowledge of Plaintiff's disabilities.

39. On or around December 15, 2024, Plaintiff informed Defendants that his mental health had significantly deteriorated and that he was experiencing suicidal ideations.

40. Plaintiff's disclosure constituted protected activity under the ADA and placed Defendants on notice that Plaintiff required immediate medical treatment and workplace support.

41. Plaintiff further advised Defendants that he intended to seek counseling and professional treatment for his disabilities.

42. Rather than allowing Plaintiff to focus on obtaining treatment, Defendants required Plaintiff to continue addressing work-related matters.

43. During this period, Plaintiff reasonably expected Defendants to engage in the interactive process required by the ADA.

44. Defendants failed and refused to meaningfully engage Plaintiff in any discussion concerning reasonable accommodations.

45. Defendants never identified, explored, or offered any reasonable accommodation that would have enabled Plaintiff to continue performing the essential functions of his position.

46. On or around December 17, 2024, Plaintiff attended a meeting with Defendants concerning his employment while Defendants were fully aware of his mental health disabilities.

47. Shortly thereafter, Plaintiff was removed from his position in Allentown.

48. Defendants subsequently directed Plaintiff to travel to Florida to perform work on a temporary assignment despite knowing Plaintiff remained under treatment for serious mental health conditions.

49. Plaintiff advised Defendants that the assignment would interfere with his counseling and mental health treatment.

50. Defendant Justin Shaw nevertheless informed Plaintiff that he "better be there" and further advised Plaintiff that if he failed to report for the assignment, he probably would not have a job.

51. Fearing termination, Plaintiff complied with Defendants' directives and traveled to Florida.

52. While performing the Florida assignment, Plaintiff continued experiencing significant anxiety, depression, insomnia, and emotional distress.

53. During this same period, Plaintiff also developed a serious dental abscess requiring medical treatment and surgical intervention.

54. Plaintiff promptly informed Defendants of his medical condition and supplied supporting medical documentation.

55. Despite possessing Plaintiff's medical documentation, Defendants continued requiring Plaintiff to travel and perform work assignments.

56. Defendant Shaw minimized Plaintiff's medical condition by referring to it as merely "a little toothache."

57. Defendants disregarded Plaintiff's medical limitations and failed to consider reasonable accommodations.

58. Throughout Plaintiff's employment, Defendants failed to engage in the interactive process required by the ADA.

59. Defendants never meaningfully discussed accommodations with Plaintiff despite possessing actual knowledge of his disabilities.

60. Any reasonable accommodation requested by Plaintiff would not have imposed an undue hardship upon Defendants.

61. Rather than accommodating Plaintiff's disabilities, Defendants increasingly isolated Plaintiff, scrutinized his conduct, and treated him differently than similarly situated employees.

62. Defendants' conduct created an intimidating, humiliating, and hostile work environment because of Plaintiff's disabilities.

63. On or around February 17, 2025, Defendants terminated Plaintiff's employment.

64. Defendants asserted that Plaintiff's employment was being terminated because of an alleged organizational restructuring and business reasons.

65. Defendants' stated reasons for Plaintiff's termination were false, inconsistent, and pretextual.

66. Plaintiff's disabilities, his repeated disclosures regarding those disabilities, his requests for assistance, and his protected activity were substantial and motivating factors in Defendants' decision to terminate his employment.

67. Defendants' actions constituted unlawful disability discrimination, retaliation, failure to accommodate, and the creation of a hostile work environment.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, anxiety, mental anguish, and loss of enjoyment of life.

69. Plaintiff has further sustained substantial economic damages, including lost wages, lost employment benefits, loss of future earning capacity, and other pecuniary losses.

70. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, and other non-pecuniary losses.

71. Defendants' conduct was intentional, willful, malicious, and carried out with reckless indifference to Plaintiff's federally protected rights.

72. Defendants' conduct entitles Plaintiff to recover all damages and equitable relief available under the ADA and the PHRA.

73. The foregoing facts represent only a portion of the unlawful discriminatory and retaliatory conduct to which Plaintiff was subjected.

## AS A FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

74. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

75. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), prohibits employers from discriminating against qualified individuals on the basis of disability with respect to the terms, conditions, and privileges of employment.

76. At all times relevant hereto, Plaintiff was an individual with a disability within the meaning of the ADA.

77. Plaintiff's chronic anxiety, Major Depressive Disorder, and related mental health conditions substantially limited one or more major life activities, including sleeping, thinking, concentrating, eating, and interacting with others.

9

78. At all times material, Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation.

79. Defendants had actual knowledge of Plaintiff's disabilities.

80. Despite possessing such knowledge, Defendants discriminated against Plaintiff because of his disabilities by, inter alia, subjecting him to disparate treatment, hostile and discriminatory remarks, heightened scrutiny, adverse employment actions, and ultimately terminating his employment.

81. Defendants' stated reasons for Plaintiff's termination were false and pretextual and were intended to conceal unlawful disability discrimination.

82. Defendants' conduct violated the ADA.

83. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

84. Defendants' conduct was intentional, willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to all relief available under the ADA.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

85. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

86. The ADA prohibits employers from retaliating against an employee because he opposes unlawful discrimination, requests reasonable accommodations, or otherwise engages in activity protected under the Act.

87. Plaintiff engaged in protected activity by disclosing his disabilities to Defendants, requesting assistance and accommodation related to his disabilities, seeking medical leave and treatment, providing medical documentation concerning his disabilities, and opposing Defendants' unlawful treatment.

88. Defendants were aware that Plaintiff engaged in protected activity.

89. Following Plaintiff's protected activity, Defendants subjected Plaintiff to materially adverse employment actions, including threatening his employment, requiring him to travel despite his medical condition, refusing to accommodate his disabilities, and ultimately terminating his employment.

90. The close temporal proximity between Plaintiff's protected activity and Defendants' adverse employment actions, together with Defendants' conduct toward Plaintiff, establishes a causal connection between Plaintiff's protected activity and the retaliation he suffered.

91. Defendants' retaliatory conduct violated the ADA.

92. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

93. Defendants' conduct was intentional, willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights.

## AS A THIRD CAUSE OF ACTION FOR FAILURE TO ACCOMMODATE UNDER THE AMERICANS WITH DISABILITIES ACT

94. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

95. The ADA requires covered employers to provide reasonable accommodations to qualified individuals with disabilities unless doing so would impose an undue hardship.

96. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

97. Defendants had actual knowledge of Plaintiff's disabilities and his need for accommodation.

98. Plaintiff remained capable of performing the essential functions of his position with reasonable accommodation.

99. Plaintiff repeatedly informed Defendants of his disabilities, worsening symptoms, ongoing treatment, and need for flexibility and support related to his medical conditions.

100. Defendants failed and refused to engage in the interactive process in good faith as required by the ADA.

101. Defendants failed to explore, discuss, or provide reasonable accommodations despite possessing actual knowledge of Plaintiff's disabilities.

102. Any reasonable accommodations requested by Plaintiff would not have imposed an undue hardship upon Defendants.

103. Instead of accommodating Plaintiff's disabilities, Defendants subjected Plaintiff to discriminatory treatment and ultimately terminated his employment.

104. Defendants' failure to provide reasonable accommodations violated the ADA.

105. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, and other compensable damages.

106. Defendants' conduct was intentional, willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights.

12

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: August 4, 2026

FREUNDLICH & LITTMAN, LLC
*Attorneys for Plaintiff*

By: */s/ Samuel C. Wilson, Esq.*
Samuel C. Wilson, Esq.
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215) 545-8510
E: *sam@fandllaw.com*